**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**ROANOKE DIVISION**

| | | |
|---|---|---|
| **TALIB-DIYN AZIZ,** | ) | **Civil Action No. 7:11-cv-00039** |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **MEMORANDUM OPINION** |
| | ) | |
| **PITTSYLVANIA COUNTY JAIL, et al.,** | ) | **By:    Hon. Michael F. Urbanski** |
| **Defendants.** | ) | **United States District Judge** |

Talib-Diyn Aziz, a Virginia inmate proceeding pro se, filed a civil rights complaint pursuant to 42 U.S.C. § 1983 with jurisdiction vested in 28 U.S.C. § 1343. Plaintiff names as defendants the County of Pittsylvania ("Pittsylvania"); the Pittsylvania County Jail ("Jail"); the Jail Administration; Sheriff Taylor; and Jail correctional officers Major Meyers, Lt. Crews, Sgt. Oscar Meeks, Corporal Phara,[1] Officer Motley, and Officer Abbott. Plaintiff alleges several different claims arising from separate incidents at the Jail. Pittsylvania filed a motion to dismiss and the other defendants filed motions for summary judgment. Plaintiff has responded to these motions, making the matter ripe for disposition. After reviewing the record, the court grants defendants' motions because plaintiff fails to state a claim that any defendant violated plaintiff's constitutional rights.

I.

Plaintiff describes three factual scenarios related to the defendants, each arising from separate incidents. Each scenario is separately described. Plaintiff describes his requested relief for all three claims as, "I wish to pursue criminal charges as well as relief in regards to these issues." (Compl. 1.)

---

[1] Plaintiff used the name Phara in the Complaint to describe a defendant, but counsel for the defendants recommends that the court change the name to Farrar, the name of a correctional officer at the Jail. However, counsel does not provide any evidence that Farrar should take the place of Phara in this litigation. Accordingly, Phara remains the

A.

On September 20, 2010, while incarcerated in the Jail, plaintiff bit into the remains of a wooden stick left in his corn dog and broke his front tooth.  Jail staff took plaintiff to a dentist, who extracted the remaining pieces of the tooth.  Plaintiff was told he would have to pay either $2,300.00 for a bridge or $850.00 for "a partial."  Plaintiff wants the dental work but does not want to pay because he alleges "they" did not properly remove the wooden stick from the corn dog before giving it to him.

B.

Plaintiff's religious beliefs require him to have long hair.  On November 12, 2010, Sgt. Meeks forced plaintiff to cut his hair, although no Jail policy required him to cut it.  Sgt. Meeks said he would take away plaintiff's good-time credit if he did not cut his hair.  Defendants Motley, Crews, Meyers, and Taylor knew of the situation but did not intervene.

C.

On December 23, 2010, at approximately 4:37 a.m., plaintiff was asleep in the Jail's laundry room with a blanket over his head.  Corporal Phara and Officer Abbott entered the room, and Phara taped plaintiff to a chair and a cabinet.  Plaintiff believes the officers intentionally left him helpless to a specific inmate's attack because he told staff that this specific inmate had stolen cereal from the kitchen.  Plaintiff alleges that the officers spoke with this inmate shortly before he was taped to the chair and cabinet.

While plaintiff was taped to the chair and cabinet, the inmate with the alleged grudge against plaintiff and another inmate entered the laundry room, stood over plaintiff, and

---

named defendant absent a motion or evidence in support of the request by either plaintiff or Farrar.

whispered to each other before leaving.  There is no allegation that plaintiff was assaulted or even threatened while he was taped to the chair.  Plaintiff pretended to sleep while the other inmates were in the laundry room because he was afraid for his life.  Afterwards, plaintiff broke free and reported the event to staff.  Plaintiff was transferred to the Blue Ridge Regional Jail six days later and briefly returned to the Jail on February 11, 2011, and April 11, 2011, for legal proceedings in the Pittsylvania County Circuit Court.  Plaintiff alleges that because of this incident he does not sleep well and wakes up sweating from his bad dreams.  Plaintiff argues that these officers violated Virginia criminal statutes, abducted him, and assaulted him.

II.

A.   PLAINTIFF FAILS TO STATE A CLAIM AGAINST PITTSYLVANIA COUNTY UPON WHICH RELIEF MAY BE GRANTED.

The court must dismiss any action or claim filed by an inmate if the court determines that the action or claim is frivolous or fails to state a claim on which relief may be granted.  See 28 U.S.C. §§ 1915(e)(2), 1915A(b)(1); 42 U.S.C. § 1997e(c).  The first standard includes claims based upon "an indisputably meritless legal theory," "claims of infringement of a legal interest which clearly does not exist," or claims where the "factual contentions are clearly baseless." Neitzke v. Williams, 490 U.S. 319, 327 (1989).  The second standard is the familiar standard for a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), accepting the plaintiff's factual allegations as true.  A complaint needs "a short and plain statement of the claim showing that the pleader is entitled to relief" and sufficient "[f]actual allegations . . . to raise a right to relief above the speculative level . . . ." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotation marks omitted).  A plaintiff's basis for relief "requires more than labels and

3

conclusions . . . ." Id.  Therefore, a plaintiff must "allege facts sufficient to state all the elements of [the] claim." Bass v. E.I. Dupont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003).

However, determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Ashcroft v. Iqbal, __ U.S. __, 129 S. Ct. 1937, 1950 (May 18, 2009).  Thus, a court screening a complaint under Rule 12(b)(6) can identify pleadings that are not entitled to an assumption of truth because they consist of no more than labels and conclusions.  Id.  Although the court liberally construes pro se complaints, Haines v. Kerner, 404 U.S. 519, 520-21 (1972), the court does not act as the inmate's advocate, sua sponte developing statutory and constitutional claims the inmate failed to clearly raise on the face of the complaint.  See Brock v. Carroll, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring); Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985).  See also Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978) (recognizing that a district court is not expected to assume the role of advocate for a pro se plaintiff).

To state a claim under § 1983, a plaintiff must allege "the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988).  Plaintiff fails to allege any act, policy, or custom Pittsylvania authorized or executed related to the claims against any defendants.  See, e.g., Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978) (defining municipal liability via § 1983).  Pursuant to Virginia law, Sheriffs are charged with the care and custody of all prisoners confined in the county jail.  Va. Code § 15.2-1609. See Va. Const. art. VII, § 4 (stating sheriffs are elected constitutional officers and not agents of

local governments).  "Under Virginia law, the Sheriff has been granted the authority to make policy for the Sheriff's Department, not for the County. . . ."  Himple v. Moore, 673 F. Supp. 758, 759 (E.D. Va. 1987).  Thus, Sheriff Taylor's policies at the Jail do not embody the official policy of Pittsylvania, and Pittsylvania does not promulgate policies or custom to compel Sheriff Taylor's or Jail employees' conduct.  Therefore, Pittsylvania cannot be held liable for Sheriff Taylor's policies or his subordinates' alleged acts.  See Grayson v. Peed, 195 F.3d 692, 698 (4th Cir. 1999) (finding Fairfax County not liable for administration of Fairfax County Adult Detention Center).  See also Va. Code § 53.1-68 (stating policies applicable to Sheriff's facilities and employees come not from counties but from the Virginia Board of Corrections and Virginia Department of Criminal Justice Services).  Accordingly, plaintiff fails to state a claim against Pittsylvania upon which relief may be granted, and Pittsylvania's motion to dismiss is granted.

B.    THE DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT.

The Jail, Jail Administration, and the individual defendants request summary judgment because plaintiff does not present a triable issue via § 1983.  A party is entitled to summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Material facts are those necessary to establish the elements of a party's cause of action.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A genuine issue of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant.  Id.  The moving party has the burden of showing – "that is, pointing out to the district court – that there is an absence of

evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  If the movant satisfies this burden, then the non-movant must set forth specific, admissible facts that demonstrate the existence of a genuine issue of fact for trial.  Fed. R. Civ. P. 56(c); id. at 322-23.  A party is entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find in favor of the non-movant.  Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).  Conversely, summary judgment is inappropriate if the evidence is sufficient for a reasonable fact-finder to return a verdict in favor of the non-moving party.  Anderson, 477 U.S. at 248.

Even if there is no dispute as to the evidentiary facts, summary judgment is also not appropriate where the ultimate factual conclusions to be drawn are in dispute.  Overstreet v. Ky. Cent. Life Ins. Co., 950 F.2d 931, 937 (4th Cir. 1991).  A court may neither resolve disputed facts or weigh the evidence, Russell v. Microdyne Corp., 65 F.3d 1229, 1239 (4th Cir. 1995), nor make determinations of credibility, Sosebee v. Murphy, 797 F.2d 179, 182 (4th Cir. 1986).  The party opposing the motion is entitled to have his or her version of the facts accepted as true and, moreover, to have all internal conflicts resolved in his or her favor.  Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979).  "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  Scott v. Harris, 550 U.S. 372, 380 (2007).  A party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another."  Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985).  "Mere unsupported speculation . . . is not enough to defeat a summary judgment motion."  Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc., 53 F.3d

55, 62 (4th Cir. 1995).   A plaintiff cannot rely on a response to a motion for summary judgment to act as an amendment to correct deficiencies in a complaint challenged by a defendant's motion for summary judgment.  See Gilmour v. Gates, McDonald & Co., 382 F.3d 1312, 1315 (11th Cir. 2004) ("A plaintiff may not amend her complaint through argument in a brief opposing summary judgment."); Barclay White Skanska, Inc. v. Battelle Mem'l Inst., 262 F. App'x 556, 563 & n.16 (4th Cir. 2008) (noting that other circuits prohibit a plaintiff from raising new claims in opposition to summary judgment and noting that district courts within the Fourth Circuit have adopted Gilmour).

       1.      <u>Plaintiff abandons his haircut claim and claims against the Jail and Jail Administration.</u>

       In response to the defendants' motion for summary judgment, plaintiff recognizes that he cannot succeed on several claims.  Plaintiff correctly concedes that neither the Jail nor the Jail Administration is a "person" for purposes of § 1983.  See McCoy v. Chesapeake Corr. Ctr., 788 F. Supp. 890 (E.D. Va. 1992) (reasoning jails are not appropriate defendants to § 1983 actions). See also  Will v. Michigan Dep't of State Police, 491 U.S. 58, 70 (1989); Brownlee v. Williams, No. 2:07cv0078, 2007 U.S. Dist. LEXIS 20650, 2007 WL 904800, at *2 (D.S.C. Mar. 22, 2007); Ferguson v. Morgan, No. 1:90cv06318, 1991 U.S. Dist. LEXIS 8295, 1991 WL 115759, at * 1 (S.D.N.Y. June 20, 1991) (concluding that "Staff" is not a person for purposes of § 1983). Accordingly, the Jail and the Jail Administration are entitled to summary judgment as a matter of law.

       Plaintiff also acknowledges that his claim about the haircut is "void" because he did not adequately inform the defendants of his religious beliefs.  The fact that defendants did not know that plaintiff's religious beliefs required that he not cut his hair necessarily means that

defendants could not have known that their actions could potentially implicate a protected constitutional right of plaintiff.  Accordingly, the defendants are entitled to summary judgment for plaintiff's haircut claim.

        2.    <u>The defendants are not entitled to summary judgment for plaintiff's inability to exhaust administrative remedies.</u>

The defendants assert in their Answers that plaintiff failed to exhaust his administrative remedies.  The Prison Litigation Reform Act provides that "[n]o action shall be brought with respect to prison conditions under [§ 1983] . . ., by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  The exhaustion requirement is mandatory, <u>Anderson v. XYZ Correctional Health Services, Inc.</u>, 407 F.3d 674, 677 (4th Cir. 2005), and "applies to all inmate suits about prison life[,]" <u>Porter v. Nussle</u>, 534 U.S. 516, 532 (2002).  "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules."  <u>Woodford v. Ngo</u>, 548 U.S. 81, 90 (2006).  Where the prison provides an administrative grievance procedure, the inmate must file a grievance raising a particular claim and pursue it through all available levels of appeal to "properly exhaust."  <u>Id.</u>; <u>Dixon v. Page</u>, 291 F.3d 485, 490-91 (7th Cir. 2002).  An inmate's failure to exhaust his administrative remedies is an affirmative defense, and the burden is on the defendant to prove the failure to exhaust.  <u>Jones v. Bock</u>, 549 U.S. 199, 216 (2007).

Defendant Crews avers that plaintiff never filed a grievance about either being taped to the chair or breaking a tooth on the corn dog.[2]  Crews provided the court with a copy of the Jail's

---

[2] Although plaintiff filed a written grievance about his hair, he did not appeal the grievance to all levels.  (Def.s' Resp. to Disc. (no. 52) Ex. D, 1-4.)  However, plaintiff already conceded this claim in response to defendants' motion for summary judgment, and the question of whether plaintiff exhausted the hair claim is moot.

grievance policy effective during the time plaintiff was at the Jail.[3]  Notably, the purpose of the policy is "to supplement, not replace, informal methods of complaint resolution at all levels[.]"  The policy does not define "informal methods," and it does not mandate written grievances as the exclusive method of exhausting administrative remedies.  See Jones, 549 U.S. at 216 ("[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.").

One way for inmates to exhaust administrative remedies is to submit a written grievance describing the complaint to the Jail Administrator, who may assign the duty to respond to an Assistant Administrator.  If the inmate is unsatisfied with the response to that written grievance, he may appeal the decision to the Grievance Committee within ten days of the Administrator's response.  If the inmate is unsatisfied with the Grievance Committee's response, he may appeal to the Sheriff within ten days of the Committee's decision.  The Sheriff's decision is final.

Each grievance form can describe only one specific issue; multiple issues must be described on multiple grievance forms.  The grievance form has four parts: the inmate's statement, the Chief Administrative Officer's response, the Grievance Committee's recommendation, and the Sheriff's Response.  "Grievances filed by [Jail] inmates . . . shall not be forwarded to any other location to which the inmate may be transferred."  (Policy (no. 61-2) 1.)

A review of plaintiff's grievance record shows that plaintiff did not file written grievances about the corn dog breaking his tooth or being taped to a chair either before or after his transfer to the Blue Ridge Regional Jail.  Although plaintiff briefly returned to the Jail on

---

[3] Plaintiff speculates that Crews did not provide an authentic copy of the applicable grievance policy because it is not actually signed by the Sheriff.  However, plaintiff's speculation does not overcome Crew's averment that it was the effective policy when plaintiff was at the Jail.

9

February 11, 2011, and April 11, 2011, he did not file any written grievances about the chair incident or the corn dog.

Sometime after his transfer, plaintiff informed his criminal defense attorney about the alleged chair incident, and the attorney informed the Sheriff. Although plaintiff never filed a written grievance as discussed in the Jail's policy, he used an informal method to inform the Sheriff, who is the ultimate reviewer of grievances. The policy does not preclude using informal methods of grievance resolution and does not mandate written grievances as the sole method of exhaustion. See Carr v. Hazelwood, No. 7:07-cv-00001, 2008 U.S. Dist. LEXIS 81753, at *13-14 (W.D. Va. Oct. 8, 2008) (Urbanski, Mag. J.) (reporting that the Pittsylvania County Jail administrative exhaustion policy does not define informal resolution and does not preclude methods other than filing written grievances).

Plaintiff also argues that administrative remedies were not available to him once he was transferred from the Jail six days after the chair incident, although he returned to the Jail on February 11, 2011, and April 11, 2011. Notably, the policy does not limit the time between when an inmate experienced a grievable issue and when the inmate can file a grievance. Plaintiff has had since September and December 2010 to file grievances about the corn dog and the chair incident, respectively.

However, plaintiff's inability to file grievances about the issues is excusable because the administrative remedies were not available to him once he left the Jail. The policy prohibits Jail grievances to be forwarded "to any other location to which the inmate may be transferred[,]" but an inmate must use one grievance form both to file the written grievance and to exhaust all

administrative appeals.  Thus, the policy prevents an inmate from filing a grievance or appealing an adverse grievance decision once he is transferred from the Jail.

As stated in the policy, it was futile for him to file a grievance in either February or April 2011 because he could not finish his appeals under the grievance process, which take days, in the few hours he was at the Jail.  The policy prevented him from exhausting appeals from all adverse rulings before his transfer, after which he could not receive his grievance form to file another appeal.  Therefore, formal administrative exhaustion was impossible for plaintiff's corn dog and chair incident claims, and plaintiff used an informal method to tell the Sheriff about the chair incident.  Accordingly, the defendants' motion for summary judgment is denied on the ground that plaintiff failed to exhaust his administrative remedies.

3.  The defendants are entitled to summary judgment for plaintiff's chair-taping claim.

In the context of unconstitutional prison living conditions, an inmate may establish a § 1983 claim by showing that a prison official acted with deliberate indifference to a substantial risk of harm.  Hudson v. McMillian, 503 U.S. 1, 8 (1992).  "To the extent that [prison living] conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society."  Rhodes v. Chapman, 452 U.S. 337, 347 (1981).  To prove deliberate indifference, the inmate must show that the official was aware of facts from which he could draw an inference that a substantial risk of harm existed, that he actually drew that inference, and that he disregarded the risk by failing to take "reasonable measures" to alleviate the risk.  Farmer v. Brennan, 511 U.S. 825, 835-37 (1994).  "[T]o demonstrate that a deprivation is extreme enough to satisfy the objective component of an Eighth Amendment [conditions] claim, a prisoner must produce evidence of a serious or significant physical or emotional injury

11

resulting from the challenged conditions."  Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995)

(internal quotations ommitted).

A prisoner alleging excessive force must objectively show that a defendant "inflicted

unnecessary and wanton pain and suffering."  Whitley v. Albers, 475 U.S. 312, 320 (1986).  See

Wilson v. Seiter, 501 U.S. 294, 298 (1991) (holding that an Eighth Amendment claim for

excessive force requires an objective deprivation of a basic human need and that prison officials

subjectively acted with a sufficiently culpable state of mind).  The subjective component

encompasses "such factors as the need for the application of force, the relationship between the

need and the amount of force that was used, and the extent of injury inflicted."  Whitley, 475

U.S. at 321 (internal quotation marks, alterations, and citation omitted).  The objective element

generally requires more than a de minimis use of force.  Hudson v. McMillian, 503 U.S. 1, 9-10

(1992).  See Wilkins v. Gaddy, ___ U.S. ___, 130 S. Ct. 1175 (2010) (stating that an inmate's

extent of injury is a relevant factor for an Eighth Amendment claim).

The evidence in the light most favorable to plaintiff fails to establish that he was

subjected to excessive force or conditions on confinement in violation of his rights under the

Eighth Amendment.  Plaintiff suffered no physical injury and does not describe any

constitutionally significant physical force used against him.  Plaintiff alleges the fear he had of

what could have happened to him while he was taped to the chair, but there is no allegation that

he was threatened, much less assaulted, while taped to the chair.  However, plaintiff does not

allege any facts to show that any inmate or staff member inflicted any pain and suffering upon

him.  Instead, plaintiff's lack of a significant physical or mental injury as a result of his prison

conditions shows that he was not subjected to cruel and unusual punishment as defined by the

Eighth Amendment.  See Strickler v. Waters, 989 F.2d 1375, 1381 (4th Cir. 1993) ("[I]n order to withstand summary judgment on an Eighth Amendment challenge to prison conditions a plaintiff must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions.").

Although plaintiff claims that he has trouble sleeping at night as a result of the taping incident, this allegation is insufficient to sustain the objective component of an Eighth Amendment claim.  See Barr v. Battiste, No. 2:06-2209, 2007 U.S. Dist. LEXIS 45603, at *11 (D.S.C. Apr. 7, 2007) (worry and loss of sleep not sufficiently serious to satisfy objective component of Eighth Amendment claim); Perry v. Bassett, No. 7:05cv00519, 2005 U.S. Dist. LEXIS 46325, at *4 (W.D. Va. Sept. 13, 2005) (Turk, J.) (allegation that plaintiff suffered sleeplessness was not an injury cognizable under the Eighth Amendment).  Moreover, plaintiff's claim of poor sleep as a result of the incident by itself does not entitle him to compensatory damages.  See 42 U.S.C. § 1997e(e) (prohibiting compensatory damages to an inmate whose injury was mental or emotional and not physical).  Assuming without finding that plaintiff's alleged facts are true, this act of taping plaintiff to a chair was wholly inappropriate, but it does not state an Eighth Amendment claim.

4.    The defendants are entitled to summary judgment for plaintiff's corn dog claim.

Plaintiff fails to identify any defendant responsible for leaving part of the wooden stick in his corn dog.  Additionally, the act of leaving a portion of the stick in the corn dog is nothing more than mere negligence.  Allegations of negligence or innocent mistake, however, do not amount to a constitutional violation.  Unus v. Kane, 565 F.3d 103, 124 (4th Cir. 2009).  See Daniels v. Williams, 474 U.S. 327, 333 (1986) ("[I]njuries inflicted by governmental negligence

are not addressed by the United States Constitution. . . .").  Accordingly, the defendants are entitled to summary judgment for this claim.

     5.    <u>Plaintiff fails to establish a supervisory liability claim against Sheriff Taylor.</u>

Plaintiff fails to allege any facts about Sheriff Taylor that are relevant to a claim. Therefore, the court construes plaintiff's claims as seeking supervisory liability against him for the alleged actions or inactions of his subordinates.  Section 1983 requires a showing of personal fault on the part of a defendant either based on the defendant's personal conduct or another's conduct in execution of the defendant's policies or customs.  <u>Slakan v. Porter</u>, 737 F.2d 368, 372-73 (4th Cir. 1984).  However, supervisory liability under § 1983 may not be predicated only on the theory of respondeat superior.  <u>Monell</u>, 436 U.S. at 663 n.7.

Plaintiff fails to establish Sheriff Taylor's liability for any actions of the prison guards. First the alleged facts do not establish that plaintiff suffered a violation of his constitutional rights.  Secondly, plaintiff fails to show that Sheriff Taylor had actual or constructive knowledge that a subordinate defendant engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to people like plaintiff or that Taylor responded so inadequately to show deliberate indifference to or tacit authorization of the alleged offensive practices.  <u>Shaw v. Stroud</u>, 13 F.3d 791, 799 (4th Cir. 1994).  Finally, plaintiff does not allege any facts that the prison guards or other officials were acting in accordance with any policies or customs established by Sheriff Taylor.  <u>Slakan</u>, 737 F.2d at 373.  Accordingly, Sheriff Taylor is entitled to summary judgment.

     6.    <u>The court may not criminally charge the defendants, plaintiff's transfer moots a request for injunctive relief, and plaintiff cannot recover damages against the defendants in their official capacities.</u>

Plaintiff specifically requests as relief that the defendants be charged with violating Virginia's criminal law.  Federal courts decide those cases, civil and criminal, brought before them.  The responsibility for charging criminal conduct lies with the law enforcement officers in each jurisdiction.  A court does not have any power either to institute state or federal criminal proceedings against a party or to recommend that criminal charges be lodged against a party.

Any request for injunctive relief against the Jail and its staff is moot.  Plaintiff's transfer from the Jail moots his claims for injunctive and declaratory relief with respect to his incarceration there.  See Incumaa v. Ozmint, 507 F.3d 281, 286-87 (4th Cir. 2007).  Furthermore, the Eleventh Amendment bars plaintiff from recovering damages from the defendants in their official capacities.  See Harris v. Hayter, 970 F. Supp. 500, 502 (W.D. Va. 1997) (recognizing that a suit against a Virginia sheriff and deputies in their official capacities is a suit against the Commonwealth of Virginia).  See also Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 280 (1977) (barring damages against arms of a State when the State has not waived its sovereignty).

III.

For the foregoing reasons, the court grants Pittsylvania's motion to dismiss and the remaining defendants' motions for summary judgment.

The Clerk is directed to send a copy of this Memorandum Opinion and the accompanying Order to plaintiff and counsel of record for defendants.

Entered:  January 28, 2012

/s/ Michael F. Urbanski

Michael F. Urbanski
United States District Judge

15